## STEAMBOAT MESSENGER *v.* GEORGE PRESSLER.

The statute of this state of 20th February, 1840, for the collection of claims against steamboats and other watercrafts, has been held by previous decisions of this court to be remedial only. This principle applies to acts and transactions occurring within, as well as to those without, the state. A steamboat is not liable to seizure under the watercraft law of this state, for a willful assault and battery committed by the mate of the boat on a hand, while the boat was lying at the landing in Cincinnati, such act being in no way connected with the business of the boat, nor in any way authorized by its owners.

*Thompson* v. *Steamboat Julius D. Morton,* 2 Ohio St. Rep. 26; *Steamboat Ohio* v. *Stunt,* 10 Ohio St. Rep. 582, cited and approved.

ERROR to the court of common pleas of Hamilton county, reserved in the district court.

This was an action brought by Pressler, in the court of common pleas of Hamilton county, against the steamboat Messenger, to recover for an assault and battery, committed by the mate of the boat upon him.

In his petition Pressler alleges that he was a hand on the boat, to-wit: a fireman, on the 8th of January, 1859; that while he was a hand as aforesaid, and while said boat was lying at the landing in Cincinnati, one John F. Miller, the mate or other officer of said boat, with force and arms assaulted the plaintiff, and beat and bruised, kicked, wounded

and otherwise illtreated and maltreated him, whereby plaintiff became and was covered with his own blood, etc. Wherefore he claims $500.00 damages.

The following is a copy of the answer:

"The defendant, for answer to plaintiff's petition says: That at the time of the alleged injury to him, she was wholly owned by John W. Stewart and John Kyle, of Ashland, Kentucky, and no part of her was owned by or in any way belonged to said Miller; that the said boat was at the time regularly licensed and enrolled under the laws of the United States, to carry on commerce among the states bordering upon the western waters generally, in the coasting trade; that she had previously been running between the ports of Cincinnati, Ohio, and New Orleans, Louisiana, and St. Paul, Minnesota, carrying freight and passengers; that she was built, equipped and being run, in accordance with the laws of the United States relating to vessels propelled in whole or in part by steam, and had her regular inspection, and license papers issued by the proper officers of the United States, and had been and was employed in such commerce, and under such inspection, license and enrollment papers, by virtue of said laws. That at the time of the alleged injury she was being prepared and making preparations for a trip, with freight and passengers as aforesaid, from Cincinnati, Ohio, to Memphis, Tennessee; that the supposed injury was in no way connected with the business of the boat, nor was it in any way authorized by the owners or either of them; that neither of them were present at the time of said supposed injury, nor have they in any way participated therein; nor are they or their property liable therefor.

"She further states that she is informed that the said plaintiff suffered little or no injury from the said mate; that what he did was occasioned by his own wrongful conduct; but whether so or not she is in no way responsible therefor, nor are her owners.

"She therefore asks that said petition be dismissed with costs."

The plaintiff demurred to the answer, and the court sus-

tained the demurrer; whereupon defendant asked time to obtain proof as to the amount of damage, and filed an affidavit presenting a cause of continuance; but the court overruled said motion, and forced the defendant to an immediate trial; to which exception was taken; and the cause went down for an inquiry of damages, which were assessed at the sum of $150.

A motion for a new trial, and a motion in arrest of judgment, were made, and overruled, and exceptions taken to sustaining said demurrer, and overruling said motions, and to reverse the judgment of the common pleas, the defendant below filed a petition in error in the district court, which was therein reserved to this court for decision.

*Lincoln, Smith & Warnock,* for plaintiff is error, argued:

*First.* That the statute should be so construed as to hold the boat liable in those cases only where her owners would be liable for the cause of action sued upon. *Thompson* v. *Steamboat Julius D. Morton,* 2 Ohio Rep. 31; *The Steamboat Ohio* v. *Stunt,* 10 Ohio St. Rep. 587; *Steamboat Ocean* v. *Marshall,* 11 Ohio St. Rep. 381; *Simmons* v. *Canalboat Huron,* 11 Ohio Rep. 488; *Hilyard* v. *The Schooner Spray,* 10 W. L. Jour. 85; *Barker* v. *Steamboat Flag,* 1 Handy, 385.

*Second.* That if so construed as to apply to a case like this, it is void as being inconsistent with that clause of the 19th section of the bill of rights, which provides that "private property shall ever be held inviolable." *Steamboat Ohio* v. *Stunt,* 10 Ohio St. Rep. 582; *Burch* v. *Newberry,* 6 Seld. 396, 397, 398; *Embury* v. *Conner,* 3 Comst. 527; *Taylor* v. *Porter,* 4 Hill, 146, 147, 148, 149; *Arrowsmith* v. *Burlingim,* 4 McLean, 497, 498; *McCoy* v. *Grandy,* 3 Ohio St. Rep. 468, 469, 470; *Embury* v. *Conner,* 2 Sandf. 106, 107; *The matter of Albany St.,* 11 Wend. 151, 152; *The matter of John & Cherry St.,* 19 Wend. 676; *Webster* v. *Cooper,* 14 How. 502, 503, 504.

*Third.* That if it is so construed, it is in contravention of the constitution and laws of the United States, in regard to the regulation of commerce. See *Gibbons* v. *Ogden,* 9

18

Wheat. 198; *Cooley* v. *Wardens of Philadelphia*, 12 How. 319; *Hays* v. *Pacific St. Ship Co.*, 17 How. 598, 599; *Smith* v. *The Eastern R. R.*, 1 Curtis, 254; *Bark Chusan*, 2 Story, 266; *Amy* v. *The State of California*, 24 How. 172; *The Passenger Cases*, 7 How. 283; *Haldeman* v. *Beckwith*, 4 McLean, 262; *Brown* v. *Maryland*, 12 Wheat. 446; *The State of Pa.* v. *Wheeling Bridge*, 13 How. 566.

*D. T. Snelbaker*, for defendant in error, insisted that the court of common pleas did not err, and that its judgment should be affirmed, and cited *Canalboat Huron* v. *Simmons*, 11 Ohio Rep. 460; 16 Ohio Rep. 95, 96; 6 Ohio St. Rep. 182; Const. U. S., art. 1, sec. 8; 2 Ohio St. Rep. 26; 3 Ohio St. Rep. 105; *Barrow* v. *Mayor of Baltimore*, 7 Pet. 250; Sedgwick on Const. and Stat. Law, 498, 501, 511; 4 Ohio St. Rep. 323, 324.

GHOLSON, J.—The title of an act, passed 26th February, 1840, is " an act to provide for the collection of claims against steamboats and other watercrafts, and authorizing proceedings against the same by name." The first section of that act provided : " That steamboats and other watercrafts, navigating the waters within or bordering upon this state, shall be liable for debts contracted on account thereof by the master, owner, steward, consignee or other agent, for materials, supplies or labor, in the building, repairing, furnishing or equipping the same, or due for wharfage ; and also for damages, arising out of any contract for the transportation of goods or persons, or for injuries done to persons or property by such craft ; or for any damage or injury done by the captain, mate or other officer thereof, or by any person under the order or sanction of either of them, to any person who may be a passenger or hand on such steamboat or other watercraft, at the time of the infliction of such damage or injury."

The question was presented in *Steamboat Champion* v. *Jantzen*, 16 Ohio Rep. 91, whether the act extended to the case of an assault and battery committed by an officer of the

boat on a hand, while the boat was navigating waters beyond the state, The court said : " It will be seen that the statute has no reference to the place where the craft was built, or where she may be owned. It is not designed to apply to boats, the property of our own citizens, and to no other. The only words used as descriptive of the craft is, ' steamboats or other watercrafts, *navigating the waters within or border-ing upon the state,*' such craft, under such circumstances *so navigating,* is, by the statute, made liable for certain torts of the master, mate or other officer. Watercraft navigating other waters, waters entirely beyond, or without the jurisdic-tion of this state, would not be reached by any legislative en-actment of this state. Nor can any legislative act with pro-priety be construed as intended to effect any such object, unless such intention is clearly and explicitly expressed. As we understand the statute, the intention of the general as-sembly was to render boats liable for the torts of its officers, committed while such boats were upon our own waters, or upon the waters bordering upon the state—to make liable civilly for the tort, where the officer committing it would be liable criminally within our own jurisdiction. Perhaps the last remark is not precisely correct. A boat or vessel upon the Ohio, or upon Lake Erie, within the limits, where those wa-ters are boundaries of the state, would be within the statute, although the act complained of may not have been committed within the actual jurisdiction of the state."

In the case of *Goodsell* v. *Brig St. Louis,* 16 Ohio Rep. 178, the same principle was applied to a claim for supplies, furnished while the craft was *not* navigating the waters within or bordering upon this state. " The act," say the court, " in its phraseology, makes no difference between contracts and torts—that is, between such contracts and torts as are therein specified."

This construction of the statute was not satisfactory to the legislature, and on the 2d March, 1848, an explanatory act was passed, providing that the act of 26th February, 1840, and an act amendatory thereof, " shall be so construed as to authorize and enable any person or persons to bring or

maintain against any such watercraft, according to the provisions of the acts of which this is explanatory, any action or actions provided for or contemplated in said acts or either of them, notwithstanding the cause of action may have accrued beyond or out of the territorial limits or jurisdiction of this state, and although such craft may not have been, at the time such cause of action accrued, navigating the waters within or bordering upon this state."

In cases arising since the statute, the legislative construction must prevail. *Schooner Aurora Borealis* v. *Dobbie,* 17 Ohio Rep. 125. The general words of the statute, declaring the liability of watercraft, can not receive the territorial restriction prescribed in the decisions of the court. It is apparent from the language of the court in making those decisions, that the legislature was understood as creating causes of action against a watercraft, which, independently of the statute, would not have existed against its owner. That not only was a remedy provided for rights before known and recognized, but new rights of action were created, or rather liabilities were imposed, where before none would have existed. Now, this view does not consist with the construction of the statute as declared by the legislature. It can not be supposed that the legislature intended, for an act done beyond the territorial limits of the state, to impose a liability on a party or his property, and provide a remedy therefor, when for such act by the law of the place where it occurred, there was no liability. That such was not the intention of the legislature has been decided by this court. *Steamboat Ohio* v. *Stunt,* 10 Ohio St. Rep. 582.

It not being, then, the intention of the legislature to impose liabilities before unknown for acts occurring beyond the limits of the state, it necessarily follows, that as causes of action accruing out of the state are positively and expressly included in the law, as explained by the legislature, it could have been only with the view of providing a remedy. Such, accordingly, was the decision of this court in the case just cited, and it was held, " that a steamboat is not liable to seizure under the watercraft law of this state, for a willful

assault and battery committed by the engineer of the boat on a passenger, while the boat was on its passage on the Ohio river beyond the territorial limits of the state, with which trespass the owners of the boat were in nowise connected."

The general language of the act of 1840, as to liabilities of watercraft, where the acts or transactions have occurred beyond the limits of the state, is to be regarded as providing a remedy, and not as creating new causes of action. The question is now presented, whether the same general language as to acts or transactions within the state can receive a different construction ?

If we are to regard the principle announced as decided in the case of *Steamboat Ohio* v. *Stunt*, 10 Ohio St. Rep. 582, it applies to and must control the decision of this case. It was there held: " That the statute of this state for the collection of claims against steamboats and other watercrafts, and authorizing proceedings against the same by name, together with its amendatory act, is simply *remedial* in its nature, being designed to afford a convenient and speedy remedy against the property of the persons liable, and to provide some means of safety in the collection of the claims, by fixing the liability of the property."

The same view of the statute had before been taken in *Thompson* v. *Steamboat Julius D. Morton*, 2 Ohio St. Rep. 26, in which case it was held that : " It is well settled by the course of decisions in Ohio, that the object of this watercraft law was to provide a convenient and efficient remedy, by subjecting the boat or vessel itself to seizure, and to avoid the difficulty of ascertaining and proceeding against the owners. The craft is not thus endowed with a capacity to contract— the law simply authorizes the craft to be made liable in a proceeding *in rem.*, and gives a mere cumulative remedy for the recovery of claims against the owners themselves."

It may be said, that the present case is not analogous to either of those—one of them differing in the circumstance that the tortious act was committed beyond the jurisdiction of the state, and the other being a case of contract, and therefore the creation of a new cause of action could not

have been in question.  But in the latter case, the constitutionality of the law, as being inconsistent with the exclusive power of congress to regulate commerce, was in question, which would involve the application of the law, as well to vessels within as without waters bordering upon this state In both cases, the object of the law is laid down in general terms, and no exception on account of the locality of the transaction appears to be countenanced.

If we felt at liberty to distinguish this case out of the general principle of those cases, we should be at a loss to find any line which, on grounds either of reason or policy, the legislature could be supposed to have drawn between classes of cases occurring in the course of the navigation of watercraft.  If the limits of the state were adopted, then the inquiry would arise, in many cases, at what point on the river or lake the vessel was at the time of the occurrence of the act in question; and it is not to be supposed, that the legislature intended that the rights of parties should so vary with the position of the vessel.  So, if the home of the watercraft were regarded, we should be required to say, that our legislature, in reference to navigation, intended to place our own citizens on a different, and it might be a more disadvantageous footing, than the citizens of other states—Kentucky, for example—engaged in precisely the same commerce, and between the same points.

We think, looking at the title of the act and its general provisions, it may very properly receive the restriction placed upon it by the previous decisions of this court.  It is properly subject to the application of the general rule, that " all words, whether they be in deeds or statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter or person."  It having been held to be fit, that as to a part of the matters within the general language of the law, it is to be deemed remedial, we see no reason to give to that general language a wider significance as to other matters.  To draw the line of distinction properly, requires the hand of the legislature.  For a court

to attempt it, would be unsafe, and, we think, an unwarrantable exercise of judicial power.

According to these views, the judgment of the court of common pleas must be reversed, and this court, rendering the judgment which that court ought to have rendered, will order that the demurrer to the answer of the defendant below be overruled, and that the case be remanded to the court of common pleas for further proceedings.

Judgment reversed.

PECK and SCOTT, JJ., concurred; SUTLIFF, C.J., and BRINKERHOFF, J., dissented.