Bradbury, J.
In the year 1893, J. L. Sterling & Son entered into a contract with the city of Cleveland, for paving Kinsman street in said city. Prom time to time, as the work progressed, estimates were made of the amount of work done, and of the sums payable to the contractors on account thereof. About the fifth day of July, 1893, an estimate was made, designated as the third, amounting to $2,437.43. Before this estimate was made, the contractors assigned and transferred to “The John *476 Porter Company” $3,000.00 of it. This sum . was larger than proved to have been earned when, after-wards, the assessment was made, so that the assignment covered this entire assessment and was not then fully satisfied.
Notice of this assignment was duly given to the city; afterwards the “The John Porter Company” assigned to the plaintiff in error whatever claim it had against the city of Cleveland by vi rtue of the assignment before noted, made to it by the contractors, J. L. Sterling & Son.
The contractors, J. L. Sterling & Son, procured the stone with which they paved Kinsman street, from the “The DeGraff & Roberts Quarries,” defendants in error, and on the 3d day of July, 1893, the latter company proceeding under section 3193, Revised Statutes, filed with the proper boards of the city of Cleveland, a sworn and itemized statement of the amount and value of the stone furnished by them to the contractors 'for paving Kinsman street, and at the same time filed a copy of such statement with the recorder of Cuyahoga county.
The city of Cleveland declining- to pay the assignee the sum assigned, he brought, in the court of common pleas of Cuyahoga county, an action against the city for its recovery. Thereupon the city answered admitting the making and the amount of the estimate in controversy, but denying that it owed the full amount thereof, and asking that the “The DeGraff & Roberts Quarries” be made a party to the action, which accordingly was done. The “The DeGraff & Roberts Quarries,” on being brought into the action, answered, setting forth that it was a corporation organized under the laws of the state of New York, and duly *477 authorized to transact business in the state of Ohio, and also setting forth that it had furnished to the contractors, under a contract entered into with them, the stone used for paving- Kinsman street, and that not having been paid for the same, they had perfected a sub-contractor’s lien on any fund due from the city on account of the paving of Kinsman street.
The cause was tried to the court, and at the request of the defendants, the court found and stated -the facts, separate from its conclusions of law. It found that the city was indebted to the amount of the estimate No. 3, and that with interest thereon, aggregated $2,692.17.
There seems to have been no contention respecting the regularity of the assignment and transfer of this estimate by the contractor, J. L. Sterling & Son, to the John Porter Company nor from the latter to the plaintiff in error, so that his right to a judg’ment against the city was clearly established, unless the DeGraff & Roberts Quarries had acquired a right thereto as sub-contractors by virtue of section 3193, Revised Statutes. This brings us to the real question in the ease.
The finding of facts shows that the DeGraff & Roberts Quarries had taken every formal step required to perfect their lien upon the fund, but it shows also that the DeGraff & Roberts Quarries was a corporation created under the laws of the state of New York; that, the contract to furnish the stone for paving Kinsman street was made in the state of New York; that the stone was to be delivered to the contractors in that state and by them transported to Cleveland, Ohio; that it was so delivered and transported, and that the stone was sold and delivered for the purpose of being *478 used by tbe contractors for paving Kinsman street, and except a small quantity was thus used. The court further found that by the laws of the state of New York, no lien exists for materials furnished in other states to be used in New York. The court of common pleas holding this to be a New York contract, and also holding that the mechanics’ lien laws of Ohio have no extra-territorial operation, refused to enforce the lien taken by the De-Graff & Roberts Quarries Company, and gave judgment for the plaintiff in error. On proceeding- in error had in the circuit court this judgment was reversed, and judgment rendered on the finding of facts in favor of The DeGraff & Roberts Quarries.
Section 3184, Revised Statutes, provides that:
“A person who performs labor, or furnishes * * * material for constructing, etc. * * * a house * * * by virtue of a contract with the owner * * * shall have a lien. ” * * *
Section 3193, Revised Statutes, which provides the remedy for sub-contractors, etc., employs language equally comprehensive. It reads as follows: Section 3193. “Any sub-contractor, material man, laborer or mechanic who has * * * furnished material * * * for the contraction * * * of any turnpike, road improvement, or other public improvement, provided for in a contract between -x- -» -x- any board or officer, and a principal contractor * * * may * * * file * * * a sworn and itemized statement.’’ * * *
The argument for the exclusion of defendants in error from the beneficial operation of these statutes is not based on any words of exclusion contained in the statutes themselves, but is vested on those general principles, that pertain to the conflict of laws.
*479 Counsel for plaintiff in error contends that the lien is merely incidental to and arises out of the contract under which the material is to be delivered ; that as the contract under which defendant in error furnished the material in question was made and fully executed in the State of New York, it was a New York and not an Ohio contract; that it must have been made with reference to the laws ■ of New York and not to those of Ohio, and that therefore an incident, depending wholly on the statutes of Ohio would not attach to the contract, and in fact could not attach to it without giving to the statutes of Ohio an extra-territorial effect.
In confirmation of this view of the subject counsel cite a decision of this court: Beckel v. Petticrew, 6 Ohio St., 247. It was there held that: “The lien authorized by the act to create a lien in favor of mechanics and others in certain cases will extend to all materials, in good faith furnished .for the purpose of erecting, or repairing a house in pursuance of a contract with the owner notwithstanding a portion of such material may subsequently be otherwise appropriated without the consent of the party furnishing them. ’ ’
'This decision, it is claimed, vests the lien of the material man upon the contract and not upon the use to which the materials furnished by him were devoted.
It is quite correct to say that this decision holds that if the contract, under which materials have been furnished for constructing, etc., any building, etc., within the statute, discloses that such materials were furnished for the purpose of being used in the performance of the work of construction, etc., that this purpose is enough to create the lien, even if the materials should be diverted from such *480 use, provided the material man did not consent to such diversion. Our attention also, might have been called to a still earlier case decided by this Court: That-of Choteau et al. v. Thompson & Campbell et al., 2 Ohio St., 114, when it was held: “If work be done or materials furnished, without a contract that they shall be put to the particular use of erecting, altering or repairing a craft or building, no lien can be asserted upon the building or vessel in which they may be placed. The contract intended by the Statute is one that has reference to the purpose for which the work is done or the materials furnished.”
These two decisions establish both the necessity of a contract prescribing the purpose to which the materials are to be devoted, and its sufficiency to create the lien, althoug'h the material should be diverted from the use agreed upon ; the lienor not assenting thereto. Notwithstanding the stress placed upon the contract by these decisions, we do not think it follows from them as a necessary sequence that the lien of the mechanic- and material men is a mere incident of such contracts, attaching only where the contracts are Ohio contracts, that is, where they are to be executed within this state.
The lien is a creature of our statutes, and whoever falls within the descriptive words of the statute may rightfully claim its benefit, wherever our statutes may be enforced. This court, in the cases of Choteau et al. v. Thompson & Campbell et al., 2 Ohio St., 114, and Beckel v. Petticrew, 6 Ohio St., 247, was not dealing with the question now under consideration; it was not then concerned about the nativity of the contract; it was construing the statute respecting the matters then in hand, in or *481 der to arrive at the legislative intention respecting them. In the first case it held, among- other things, that a sale of materials, without any reference to the use to which they should be put, would not afford a ground to assert a lien, because the contract referred to by the statute required that the materials should be sold for the purpose of being used for the construction, etc., of the house, etc., upon which the lien was to be asserted. In the second case it held that the statute, when fairly construed, did not require that all the materials furnished under the contract should have been used in the structure for which they were furnished and on which the lien was asserted. In those eases our predecessors were seeking to ascertain, and to declare the intention of the legislature, and for that purpose they looked to the language which that body had employed. We are required not only to ascertain the legislative intention, but also to determine whether the subject over which they attempted to legislate was within their authority.
To ascertain the legislative intention we must Took to the language it employed to express it. When this is done, we find the language employed, when construed according to its natural import, will clearly embrace all contracts to furnish materials for the purposes named in the statute, regardless of the place where the contract was made or the • materials to be delivered. The words are “any * * * material man,’’etc., “who has furnished material * * for the construction * * of an improvement,” * * * * more comprehensive language could not have been used. No other words appear that tend to establish *482 an intention to narrow the scope of those recited, or that indicate a purpose to limit the benefits of the statute to vendors, who bring within the state the materials they furnish. The defendants in error, therefore, are plainly within the terms of the statute. This construction finds support in Sproul v. McCoy, 26 Ohio St., 577, where this court held that the statutes of this state allowing exemptions from execution and sale to “every person who has a family,” may be invoked by ‘ ‘any debtor against whom an action is prosecuted in the courts of this state, whether such debtor be or be not a resident of this state.” The language of the statute granting- the exemption is no more comprehensive than that employed by the mechanics’ lien statutes in giving a lien to sub-contractors and material men.
We now come to the question of the power of the legislature to dispose of the fund, or create alien, in favor of a vendor who sells and delivers materials in another state.
That the statutes of Ohio cannot operate, propria vigore, beyond the boundaries of the state, is a settled rule of law, and therefore, notwithstanding the intention of the legislature to embrace within the beneficial provisions of the statute all persons who should sell and deliver, in another state, materials to be brought here and used for the purposes designated by the statute, yet the statute could not be applied to such transactions, if thereby its operation was extra-territorial. Remedial laws, however, whether written or unwritten, do not operate extra-territorially, on account of being applied by the courts of the state in which they are in force, to actions pending in such courts on contracts made and to be performed *483 in another state or country. Remedies will bead-ministered according- to the law of the place where the action is instituted, without regard to the law of the place where the right arose. Heaton v. Eldridge & Higgins, 56 Ohio St., 87; Andrews v. Harriott, 4 Cowen, 508; Robinson v. Bland, 2 Burr. 1084; De La Vega v. Vianna, 1 Barn, and Adolph, 284; Trasher v. Everhart, 3 Gill and Johns., 234; Hyde v. Goodnow, 3 Comstock, 270; Bank of the United States v. Donnally, 8 Peters, 361. This principle is illustrated and enforced by a large array of authorities, that are practically unanimous, but it is not necessary to refer to them further.
By the great weight of authority statutes that relate to liens of mechanics and material men are remedial; instead of creating new and substantive rights, they simply afford new and cumulative remedies to enforce obligations previously recognized. Hanes & Co. v. Wadey et al., 73 Mich. 178; Best v. Baumgardner & Co., 122 Penn. St., 17; Martin v. Hewitt, 44 Ala., 419; Hall v. Bunte, 20 Ind., 304; Bangor v. Goding et al., 35 Me., 73; Frost v. Ilsley, 54 Me., 345; Woodbury et al. v. Grimes et al., 1 Colo., 100.
These principles would seem to settle the question in favor of the operation of the statute in the case, of material delivered in another state.
However, should the rule in reference to the nature of mechanics’ lien laws be otherwise, and those laws held to create substantive rights,which, when once vested, are placed beyond legislative interference, nevertheless as the fund in controversy originated under our laws, was actually within our borders, and was in the . custody and subject to the orders of one of our courts, it would *484 seem to naturally follow that its disposition should follow the course prescribed by our legislature. To thus dispose of the fund is to assert the dominion of our own statutes, while to distribute it according to the statutes or decisions of another state would be to acknowledge their superiority The case does not fall within the reasons of those rules which induce the court of one state or country to construe the rights of parties arising under a contract, made and to be executed in another state, according to the laws of the latter. In the case before- us the material was furnished for the purpose of being used in an improvement to be made in this state ; under such circumstances how can it be said that the parties did not contemplate the laws of Ohio in reference to rights which thus arise? Surely if the question related to a lien upon real estate, such as the mechanics’ lien laws of this state create, its existence and its terms would depend upon our statutes ; the laws of 'New York could place no burden upon land situated in Ohio. True, a lien upon real estate was not asserted nor involved in. the case before us, but there was involved the distribution of afund created and set aside by a statute of this state for the benefit of persons who might, fall within the class declared by that statute to have a right to share in its distribution. The statute in conferring this benefit made no distinction between a fund raised by a sale of real estate upon which a lien was given, and a fund in the possession of some public agency. In each case the distribution was to be made according to the same rule. We think the right of the parties in either ease was determinable according to the laws of this state.
*485 This view of the question is strongly supported by the decisions of this court in respect of the water craft statutes. Schooner Aurora Borealis v. Dobbie, 17 Ohio, 125; Steamboat Ohio v. Stunt, 10 Ohio St., 582; Steamboat Messenger v. Pressler, 13 Ohio St., 255. It also finds support in'the following cases: The St. Louis Bridge & Construction Co. v. Railroad Co., 72 Mo., 664; Thompson v. Railway Co., 45 Minn., 13, 15; Great Western Manufacturing Co. v. Bunter Bros, et al., 15 Neb., 33, 37; Fagan & Osgood v. Boyle Ice Machine Co., 65 Tex., 324; Gaty v. Casey, 15 Ill., 189.
The defendant in error, The De Graff and Roberts Quarries, was, by the court of common pleas, made a party to the action on the application of the city of Cleveland. This action of that court is attacked as erroneous by counsel for plaintiff in error, but as the question does not arise on the records, it has not been considered in this opinion.

Judgment affirmed.