McCormick, a Minor, Appellant, *v.* Henry Boats, Inc., et al.,
Appellees.

(No. 8708—Decided July 25, 1967.)

*Messrs. Dunbar, Kienzle & Murphey, Mr. Frank C. Dunbar,
III,* and *Mr. David J. Young,* for appellant.
*Messrs. Hamilton & Kramer, Mr. Charles N. Myers, Jr.,*
and *Mr. Thomas A. Bustin,* for appellees.

Herbert, J. This appeal on questions of law comes to us
from a judgment in the court below which sustained the demur-
rer of defendant Henry Boats, Inc., entered judgment for it and
dismissed it as a party to the action. The basis for the demurrer
was that the petition failed to allege facts which stated a cause
of action against that defendant.

The first paragraph of the amended petition reads as fol-
lows:

''Michael L. McCormick is a minor, sixteen years of age,
and this action is brought by Robert H. McCormick as father
and next friend of Michael. Plaintiff and defendant John A.
Lukeman, hereinafter referred to as 'Lukeman,' are residents

of Franklin County, Ohio, living at the addresses set forth in the caption. *Henry Boats, Inc., is an Ohio corporation, and was at all times pertinent the owner of the boat alleged herein.*" (Emphasis added.)

The remainder of the petition states, in substance, that plaintiff was injured when run down by a motor-boat which was being negligently operated upon the waters of the Griggs Reservoir in Franklin County by defendant John A. Lukeman. Aside from the above-italicized portion of the petition, no other reference is made to defendant Henry Boats, Inc. However, plaintiff contends that by virtue of Chapter 4585 of the Revised Code, "A cause of action against an owner of a watercraft causing injuries to a person on the waters of Ohio is stated when the fact of ownership is alleged in conjuction with an allegation of negligence of the driver."

The main position taken by the instant defendant is that Section 4585.01, Revised Code, must be limited to provide a cause of action for personal injury only where the injured person has "a contract with the owner of the boat to recover damages occasioned by injury to person or property by such boat."

The pertinent sections of Chapter 4585, *supra,* as they presently appear in the Revised Code are as follows:

Section 4585.01.

"Any watercraft navigating the waters within or bordering upon this state, is liable for the following:

"(A) All debts contracted on account of such watercraft by the master, owner, steward, consignee, or other agent:

"(1) For materials, supplies, or labor in the building, repairing, furnishing, or equipping of such watercraft;

"(2) For insurance;

"(3) For wharfage;

"(B) Damages arising out of any contract:

"(1) For the transportation of goods or persons;

"(2) For injuries done to persons or property by such watercraft;

"(3) For any damage or injury done by the captain, mate, or other officer thereof, or by any person under the order or sanction of any of them, to any person who is a passenger on,

or employee of, such watercraft at the time of the infliction of such damage or injury.

"Such liability shall be a lien on such watercraft."

Section 4585.03.

"A person having a demand provided for in Section 4585.-01 of the Revised Code, may proceed against the owner of the watercraft, the master who contracted the debt, or against the watercraft itself.

"Such person may file a petition as in a civil action in the Court of Common Pleas, against the watercraft by name, or if it does not have a name, by a pertinent and substantial description of it."

Section 4585.11.

"If the proceeds of the sale of the watercraft do not satisfy the judgment, the owner of the watercraft, or master who contracted the debt or incurred the liability, shall be liable in a civil action for the balance."

One of the main sources of confusion in this appeal is the present structure of Section 4585.01. As a reading of the history of that section shows, it was not always so constituted. Its immediate forerunner was Section 12088, General Code, which in turn came from Section 5880, Revised Statutes. The changes wrought in the phrasing of Section 4585.01, Revised Code, came about with the adoption of the Revised Code in 1953. As such, those alterations may not be considered as introducing any substantive changes into what had been Section 12088 of the General Code. (Section 1.24, Revised Code.) Therefore, a discussion of the legislative history of Section 4585.01, Revised Code, would seem appropriate.

On February 26, 1840, the Thirty-Eighth General Assembly enacted a law "Providing for the collection of claims against steamboats and other watercrafts, and authorizing proceedings against the same by name." (38 Ohio Laws 34.) Sections of that Act which apply here read as follows:

"Sec. 1. *Be it enacted by the General Assembly of the State of Ohio*, That steamboats and other watercrafts navigating the waters within or bordering upon this state, shall be liable for debts contracted on account thereof, by the master, owner, steward, consignee or other agent, for materials, supplies or

labor, in the building, repairing, furnishing or equipping the same, or due for wharfage; and also for damages arising out of any contract for the transportation of goods or persons or for injuries done to persons or property by such craft, or for any damage or injury done by the captain, mate, or other officer thereof, or by any person under the order or sanction of either of them, to any person who may be a passenger, or hand, on such steamboat or other watercraft at the time of the infliction of such damage or injury.

"Sec. 2. Any person having such demand may proceed against the owner or owners or master of such craft, or against the craft itself."

The section was amended on April 12, 1858 (55 Ohio Laws 72), and again on March 10, 1860. (57 Ohio Laws 32.) As constituted following the latter amendment, with language italicized which differed from the original enactment, the section provided:

"* * * Section 1. That all steamboats and other water crafts, *of twenty tons burden and upwards*, navigating the waters within or bordering upon this state, shall be liable, *and such liability shall be a lien thereon*, for all debts contracted on account thereof, by the master, owner, steward, consignee or other agent, for materials, supplies, or labor in the building, repairing, furnishing or equipping the same, *or for insurance*, or due for wharfage, and also for damages arising out of any contract for the transportation of goods or persons, or for injuries done to persons or property by such craft, or for any damages or injury done by the captain, mate, or other officers thereof, or by any person under the order or sanction of either of them to any person who may be a passenger or hand on such steamboat or other water craft, at the time of the infliction of such damage or injury."

The "twenty tons burden" qualification apparently found its origin in the early federal maritime law and survived until April 19, 1881, when the section was again amended, this time by House Bill 534 of the Sixty-Fourth General Assembly and in the following manner:

"* * * Any steam boat, or other water-craft, navigating the waters within or bordering upon this state, shall be liable, and such liability shall be a lien thereon, for all debts contract-

ed on account thereof by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor in the building, repairing, furnishing, or equipping of the same, or for insurance, or due for wharfage, and also for damages arising out of any contract for the transportation of goods or persons, or for injuries done to persons or property by such craft, or for any damage or injury done by the captain, mate, or other officer thereof, or by any person under the order or sanction of either of them, to any person who is a passenger or hand on such steamboat or other water-craft, at the time of the infliction of such damage or injury." (78 Ohio Laws 228)

This latter change represented the last substantive alteration in what is now Section 4585.01, Revised Code, and we conclude that for the purposes of this appeal the wording of the statute as last above set out must be used. Further, we hold that the section as thus constituted does not require a contract between a vessel's owner and a person to whom it has caused bodily injury in order for such person to recover damages against the owner. However, as we view this appeal, the foregoing determination falls short of answering all the questions presented.

In 1846, the Supreme Court labored over this section of the Code in the case of *Jones* v. *The Steamboat Commerce*, 14 Ohio 408. Judge Birchard displayed his mastery of the understatement by the following observation at page 410 in his opinion:

"* * * so singularly infelicitous is the wording of the statute, that I know not that any two members of the bar place the same construction on all its parts. Under these circumstances, we may consider ourselves fortunate beyond the common lot, if our construction shall happen to meet the approbation of the entire profession."

The apparent reason for the foregoing comment was that the same question presented by the case at bar had been plaguing the judiciary in those early years, *i. e.*, did the General Assembly intend to create absolute liability against a water-craft owner, in derogation of the common law, or was the section merely to represent a cumulative remedy against an owner whose fault *ex delicto* or liability *ex contractu* had already arisen under commonly accepted legal doctrines.

An early view of the statute is expressed in *The Canal-Boat Huron* v. *Simmons,* 11 Ohio 459, 460:

"The mischief intended to be remedied, was the difficulty of collecting debts due from the owners of boats, for articles furnished for their use, and for the recovery of damages sustained to persons or property by boats, and by the conduct of the crew.

"The difficulty of hunting up the owners of the boat, induced the Legislature, in all cases, to substitute the boat, in their stead, and treat her, for the purposes of a suit, as a person, and sell her out to satisfy the judgment which might be recovered. And, further, make the boat responsible for any injury done to any passenger, or property on board.

"The ease with which persons navigating our waters could escape legal process; avoid the payment of debts contracted for the use of the boat; and the impunity with which the persons navigating them could inflict injury upon persons and property; the irresponsible character, oftentimes, of the officers and crew; the difficulty of obtaining names, and of identifying persons, induced the Legislature, wisely, to make the boat itself responsible for the payment of all debts, and the good conduct of the officers of the boat."

While it could be argued that a careful reading of the above still suggests a strictly remedial approach, it is apparent that an exponent of the absolute liability theory could also find comfort in the language used.

However, a clearer line of authority began to emerge in the case of *Thompson* v. *Steamboat Julius D. Morton,* 2 Ohio St. 26, where the following statement is made at page 31 in the opinion:

"It is well settled, by the course of decisions in Ohio, that the object of this water-craft law was to provide a convenient and efficient remedy by subjecting the liability of the boat or vessel itself, and thus avoid the difficulty which often exists, of ascertaining and proceeding against the owner or owners in person. Section 2 of the law gives the person having the demand the option to proceed against the owner, the master, or craft itself. By the first clause of section 1, which contains the provision under which this action is brought, the proceeding is authorized against the craft upon a liability sounding in contract. This con-

tract is one to which the owner is a party, and upon which he is himself personally liable. The craft itself is endowed with no capacity to become a party to a contract. The law simply authorizes the craft to be made liable upon seizure by a proceeding *in rem*. It is true, the craft is named as the defendant in the proceeding, but this does not constitute it an artificial person, with capacity to contract. This proceeding, therefore, is only an accumulative remedy given by the statute, for the recovery of a claim against the owner himself. * * *''

In paragraphs one and two of the syllbaus of *The Steamboat Ohio* v. *Stunt,* 10 Ohio St. 583, a firm position is taken upon the question:

"1. The statute of this state for the collection of claims against steamboats and other water-crafts, and authorizing proceedings against the same by name, together with its amendatory act, is simply *remedial* in its nature, being designed to afford a convenient and speedy remedy against the property of the persons liable, and to provide some means of safety in the collection of the claims, by fixing the liability of the property.

"2. The property of one person can not be subjected to the payment of the debt of another, without invading the right of private property, which the Constitution declares 'shall ever be held inviolate;' and whatever may be the competency of the legislative power to create such a liability, by way of forfeiture, penalty, or confiscation, upon the ground of public policy, it can not be done by *mere implication*; and in the absence of any provision expressly declaring the public duty exacted and providing for *such liability*, a statute providing for the collection of claims by a summary proceeding against property, by its seizure or attachment, must be construed as simply providing a remedy for the *enforcement* of liabilities, and not as *creating* new liabilities upon the owners of property, not arising at common law."

Also of interest is the syllabus of *Steamboat Messenger* v. *Presslcr,* 13 Ohio St. 255:

"The statute of this state of 20th February, 1840, for the collection of claims against steamboats and other watercrafts, has been held by previous decisions of this court to be remedial only. This principle applies to acts and transactions occurring within, as well as to those without, the state. A steamboat is

not liable to seizure under the watercraft law of this state, for a willful assault and battery committed by the mate of the boat on a hand, while the boat was lying at the landing in Cincinnati, such act being in no way connected with the business of the boat, nor in anyway authorized by its owners.

"*Thompson* v. *Steamboat Julius D. Morton*, 2 Ohio St. Rep. 26; *Steamboat Ohio* v. *Stunt*, 10 Ohio St. Rep. 582, cited and approved."

A review of comparable legislation from other states indicates that a boat owner's liability in tort or upon contract is clearly limited as suggested by the Ohio authorities. New York has no deficiency judgment procedure comparable to Ohio's Section 4585.11, provides only for a lien springing from property damage and contract and requires a showing of lack of care on the part of the vessel's operator. (New York Lien Law, Section 81 *et seq.*) Illinois requires a showing of lack of operator care where liens based upon personal injury are concerned. (Illinois Rev. Stats., Chapter 12, Section 1 *et seq.*) California allows a lien on the vessel for contract, property damage and personal injury, states no need for a showing of operator or crew lack of care, but has no deficiency judgment provision. (California Code of Civil Procedure, Section 813 *et seq.*) Kentucky limits the owner's liability to transactions involving a steamboat, brig, schooner, sloop or model barge and requires a showing of lack of care on the part of an officer or member of the crew. (Kentucky Revised Statutes 376.360 *et seq.*) Massachusetts watercraft liens extend only to contract actions arising out of the vessel's use. (Massachusetts General Laws, Chapter 255, Section 14 *et seq.*) See, also, Tennessee Code Annotated, Section 64-1904 *et seq.* Pennsylvania permits a lien on the watercraft for personal injuries and fails to affirmatively require a showing of lack of care, but no provision is made for personal liability of the owner. (12 Pennsylvania Statutes, Section 3131 *et seq.*)

Federal law also deals with the question of boat-owner liability, as the Congress has specifically provided a procedure whereby an owner of a vessel may limit his financial responsibility for injury or damage caused by his craft. (Section 183, Title 46, U. S. Code.) It should be noted, however, that such federal limitation procedure has been held to be available only where vessels are being operated on "navigable waters of the

United States.'' For a definition of that phrase and a discussion of the federal law with regard thereto, see *Petition of Madsen,* 187 F. Supp. 411, and *Marine Office of America* v. *Mannon,* 241 F. Supp. 621.

From all of the foregoing, it is our conclusion that Chapter 4585 of the Revised Code provides only a cumulative remedy for those affected thereby and that where a person is injured by a watercraft navigating the waters within or bordering upon this state, a petition *ex delicto* against the owner of the vessel for recovery of damages resulting from such injury, which does not contain the usual averments of proximate cause and direct or imputed negligence on the part of such owner, is subject to a demurrer.

The judgment below must be affirmed at appellant's costs.

*Judgment affirmed.*

DUFFEY, P. J., and DUFFY, J., concur.